UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------X
```

RAYMOND  LIENAU

Plaintiff

CIVIL ACTION NO.: 12 Cv. 06572 (ER)

AMENDED COMPLAINT
IN A CIVIL ACTION

-against-

P.O. ANGEL GARCIA, Individually
P.O. DONALD PETERS, Individually
DETECTIVE TIMOTHY TAUSZ, Individually
RACHEL WILLGOOS, Individually
TOWN OF YORKTOWN

Defendants

```
------------------------------------------------------X
```

## JURISDICTION

This Court has original jurisdiction under 28 U.S.C. § 1331, 42 U.S.C. § 1983, 42 U.S.C.

§ 1988.

## JURY TRIAL DEMANDED

Plaintiff, Raymond Lienau by his undersigned attorneys, for his complaint against

defendants states:

### COUNT I: ARREST AND PROSECUTION FEBRUARY 4, 2010

1. Plaintiff, is and was at all relevant times herein a resident of the State of New York,

   County of Westchester.

2. Donald Peters, is and at all times relevant herein was a resident of the State of New York

   County of Westchester.

3. Angel Garcia, is and at all times relevant herein was a resident of the State of New York

   County of Westchester.

4. At all times relevant herein Timothy Tausz is and at all times relevant herein was a

of the State of New York County of Westchester.

5.  Rachel Willgoos is and at all times relevant herein was a resident of the State of New York County of Westchester.

6.  Between 2002 and 2006, Plaintiff and Rachel Willgoos also resided in Connecticut on an on and off basis.

7.  At all times relevant herein the Town of Yorktown was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.  At all times relevant herein the Town of Yorktown operated a municipal police department known as the Yorktown Police Department.

9.  On or about February 4, 2010 and at all times relevant herein Angel Garcia was an employee of the Town of Yorktown and the Yorktown Police Department and was acting in the course and scope of his employment.

10. On or about April 7, 2010, and at all times relevant herein Donald Peters was an employee of the Town of Yorktown and the Yorktown Police Department and was acting in the course and scope of his employment.

11. At all times relevant herein, Timothy Tausz was an employee of the Town of Yorktown and the Yorktown Police Department and was acting in the course and scope of his employment.

12. At all times relevant herein Timothy Tausz was acting under the color of law.

13. At all times relevant herein Donald Peters was acting under the color of law.

14. At all times relevant herein Angel Garcia was acting under the color of law.

15. At all times relevant herein Timothy Tausz was a supervisor and supervised the other Defendant police officers names herein.

16. At all times relevant herein Rachel Willgoos engaged in joint action with the state actor defendants herein and in so doing acted under the color of law.

17. In 2000, Plaintiff and Rachel Willgoos had been lawfully married to each other and three children were born of the marriage.

18. At all times relevant herein, Plaintiff had physical custody of the couple's children.

19. In 2005 Plaintiff and Rachel Willgoos were divorced and agreed to joint custody of the children, however, Plaintiff had physical custody of the children, the majority of the time.

20. Following the divorce, Rachel Willgoos made numerous attempts to obtain full custody of the children through both fabricated allegations of domestic abuse to the Yorktown Police Department and petitions to Westchester Family Court, most of which contained fabricated allegations that Plaintiff had physically abused Rachel Willgoos.

21. For several years prior to the divorce proceedings, the relationship between Plaintiff and Rachel Willgoos had deteriorated.

22. Prior to the commencement of the aforesaid divorce, Rachel Willgoos had made numerous false allegations of abuse against the Plaintiff in attempts to gain order of protection so that Rachel Willgoos could obtain custody of the couple's children and obtain exclusive use of the marital residence, all of which were done by Willgoos with malice and spite.

23. On November 7, 2002, Rachel Willgoos commenced a proceeding in the Superior Court of Connecticut in which she sought an order of protection and immediate custody in which she filed an Affidavit for Relief from Abuse in which she falsely stated that Plaintiff had for the last eight months engaged in a continually escalating pattern of behavior including verbal, mental and physical abuse and that Plaintiff tried to throw her and the couple's

children out of their home, that Plaintiff hit her, that Plaintiff was using the children as pawns, that Plaintiff was actively using marijuana and was unable to care for the children because he was under the influence of drugs, all of which was false and said false allegations were made with malice and spite.

24. At the time when Rachel Willgoos made the statements in the November 7, 2002 affidavit, there was no evidence of any physical injury corroborating that she had been hit by anyone.

25. Plaintiff had never assaulted Rachel Willgoos, nor was there ever any evidence of an injury or any other physical evidence to substantiate her claims.

26. The allegations contained in the November 7, 2002 Affidavit for Relief from Abuse when made by Rachel Willgoos were knowingly and intentionally false and were made with malice and the specific intent to obtain an order which gave her custody of the children and exclusive use of the marital premises so that she could effectively exclude the Plaintiff from having a relationship with his children thereby using the legal process as a means to harm the Plaintiff.

27. In November, 2002, Plaintiff's father was an active duty detective with the Yorktown Police Department.

28. As a result of November 7, 2002, Plaintiff was ordered to surrender to the Norwalk Police Department and Plaintiff was issued a summons to report to the Family Court.

29. Officers from the Norwalk Police Department contacted Plaintiff's father and discussed the allegations made against Plaintiff with his father.

30. Following Plaintiff's father learning of the fabricated allegations against his son, he discussed the fact that his son's wife was making false allegation of abuse with his fellow

officers at the Yorktown Police Department.

31.     As a result of the November 7, 2002 Affidavit for Relief from Abuse, Rachel Willgoos
        was given an ex parte order of protection and Plaintiff was prohibited from seeing his
        children and prohibited from going to the martial home without any opportunity to be
        heard.

32.     Immediately prior to the hearing, during which Rachel Willgoos' testimony would have
        been cross examined and Plaintiff would have the opportunity to testify and be heard,
        Rachel Willgoos withdrew the affidavit and the proceeding was dismissed.

33.     The allegations in the November 7, 2002 Affidavit for Relief from Abuse were withdrawn
        because they were meritless.

34.     On March 20, 2003, Rachel Willgoos filed another Affidavit for Relief from Abuse with
        the Connecticut Superior Court in which she falsely alleged that Plaintiff continuously hit
        her, poked her in the face, shoved her to the floor while she was holding a child and that
        said events occurred in front of the children.

35.     In the March 20, 2003, Affidavit for Relief from Abuse, Rachel Willgoos also falsely
        accused Plaintiff of being verbally abusive and physically violent, that he slapped her on
        her rear end, and that Plaintiff continued to smoke marijuana.

36.     Plaintiff had never assaulted Rachel Willgoos, nor was there ever any evidence of an
        injury or any other physical evidence to substantiate her claims.

37.     Rachel Willgoos knowingly made all of the allegations in the March 20, 2003 Affidavit for
        Relief from Abuse, with knowledge that they were false and with malice and spite, so that
        she could again use the legal system as a tool to advantage herself and harm the Plaintiff.

38.     As a result of the March 20, 2003 Affidavit for Relief from Abuse, Rachel Willgoos was

given an ex parte order of protection and Plaintiff was prohibited from seeing his children and prohibited from going to the martial home without any opportunity to be heard.

39.   Immediately prior to the hearing, during which Rachel Willgoos' testimony would have been cross examined and Plaintiff would have the opportunity to testify and be heard, Rachel Willgoos withdrew the affidavit and the proceeding was dismissed.

40.   The allegations in the March 20, 2003 Affidavit for Relief from Abuse were withdrawn because they were meritless.

41.   The Plaintiff's father after his retirement with the Yorktown Police Department had maintained contact and communication with various officers of the Yorktown Police Department and had made it known to the Yorktown Police officers that Rachel Willgoos had repeatedly made false allegations of abuse.

42.   The aforesaid dismissals of the charges brought by Rachel Willgoos against Plaintiff and the lack of merit of Rachel Willgoos' claims were common knowledge among members of the Yorktown Police Department by virtue of the fact that Plaintiff's father had discussed the fabricated complaints with other officers at the Yorktown Police Department, which was and is a small police department.

43.   Various employees of the Yorktown police department were complicit in Rachel Willgoos' scheme to have victimize Plaintiff through false allegations in that among other things, they would arrest Plaintiff even though it was common knowledge in the Yorktown Police Department that Rachel Willgoos had serious issues to her veracity, in that Yorktown Police officers would refuse to take the Plaintiff's legitimate complaints of criminal conduct against Rachel Willgoos, and pursued obviously baseless complaints by Willgoos against the Plaintiff.

44.     On or about March 1, 2008, Plaintiff was attacked by Rachel Willgoos with a knife after

        Willgoos had become enraged that Plaintiff's mother had visited the children.

45.     As a result of the aforesaid attack by Ms. Willgoos, Plaintiff's hand was lacerated, and

        Plaintiff went to the Yorktown police station and reported the attack to officer McGuinan,

        who refused to file the report or arrest Willgoos, despite obvious evidence of a knife

        wound to the Plaintiff's hand.

46.     On March 2, 2008, the day following the aforesaid incident, Willgoos claimed that Plaintiff

        had assaulted her, even though Plaintiff did not assault her.

47.     Plaintiff had never assaulted Rachel Willgoos, nor was there ever any evidence of an injury

        or any other physical evidence to substantiate her claims.

48.     Even though a charge of assault requires as an element of the crime an objective injury,

        Rachel Willgoos had no physical injury whatsoever, nor was there any physical evidence

        that an assault had occurred, nevertheless, Plaintiff was arrested by members of the

        Yorktown police department and charged with assault in the third degree based upon

        Willgoos' fabricated claims.

49.     On March 2, 2008, Rachel Willgoos signed a supporting deposition in which she stated

        that on March 1, 2008, Plaintiff punched her in her head and face and she sustained a

        bloody nose and bumps on her head, grabbed her, threw her on the bed and ripped off her

        shirt and that she sustained a physical injury, all of which was false.

50.     When Rachel Willgoos made the allegations in the March 2, 2008 supporting deposition,

        she knew and/or it was reasonably foreseeable that the supporting deposition would be

        forwarded to the prosecutor and/or the Yorktown Court.

51.     When Rachel Willgoos made the allegations in the March 2, 2008 supporting deposition,

she knew that Plaintiff had not assaulted her, that she had no physical injury and all of the aforesaid fabricated allegations, were made with malice and in an attempt to wrongfully obtain an order of protection to prevent Plaintiff from seeing his children and to obtain exclusive use of the property which Willgoos and Plaintiff were actively sharing.

52.   As a result of the March 1, 2008 allegations, Plaintiff was arrested and charged with assault in the third degree and Rachel Willgoos obtained an order of protection based upon fabricated allegations of abuse.

53.   On March 3, 2008, Rachel Willgoos, initiated a Family Court petition in which she attempted to obtain full custody of the Plaintiff's children through false allegations that Plaintiff committed acts which constitute harassment in the second degree, menacing in the third degree, assault in the second degree, assault in the third degree, attempted assault and stalking in the third and fourth degree.

54.   In her March 3, 2008, Family Court petition, Rachel Willgoos accused Plaintiff of hitting her in her head with a closed fist, causing pain in her jaw and a bloody nose, that he threatened to break her personal belongings and then grabbed her and ripped her shirt, all of which was false.

55.   The assault in the third degree was ultimately dismissed.

56.   In her March 3, 2008, Family Court petition, Rachel Willgoos also falsely stated that on January 29, 2008, Plaintiff threw her against a radiator with exposed metal causing her to cut her back and then picked up a wooden baby gate and broke it against her shoulders, then physically threw her out of the house, all of which was false.

57.   In her March 3, 2008,Family Court petition, Rachel Willgoos also falsely stated that Plaintiff had threatened to kill her and dump her body at in the sea, all of which was false.

58.     The aforesaid allegations in the March 3, 2008 petition and the criminal complaint of

        assault were made with malice in an attempt to obtain an ex parte order of protection to

        deprive Plaintiff of having a relationship with his children and to otherwise harm the

        Plaintiff and exclude him from the residence where he lived.

59.     The March 3, 2008 Petition was withdrawn prior to the Court conducting a fact finding

        hearing because Willgoos knew the allegations contained therein were meritless and

        fabricated.

60.     By and through the foregoing, Rachel Willgoos had perpetrated a pattern, scheme and

        modus operandi whereby prior to February 4, 2010, she attempted to gain leverage and an

        upper hand in the custody litigation by making numerous baseless allegations of abuse

        against Plaintiff to various members of law enforcement including the Yorktown Police

        Department, the New York and Connecticut Courts and by having Plaintiff arrested and

        prosecuted baselessly, and obtaining orders of protection under false pretenses, only to

        withdraw at the last minute before a fact finding hearing was to be held.

61.     By and through the foregoing, Defendants were aware that Rachel Willgoos had and was

        engaging in a pattern of conduct in which she was making false complaints of abuse and

        false criminal accusations against the Plaintiff in an attempt to gain a tactical advantage in

        the pending custody action(s).

62.     By and through the aforesaid the lack of merit of Rachel Willgoos' claims were common

        knowledge among members of the Yorktown Police Department as of February 4, 2010

        and they knew that there were substantial reasons to question Rachel Willgoos' credibility.

63.     On or about January 18, 2010, Rachel Willgoos had filed an application with the

        Westchester Family or Supreme Court for sole custody of the children born of the

marriage between Rachel Willgoos and Plaintiff, in which she again made false allegations that Plaintiff had physically abused her.

64.    On or about February 1, 2010, the aforesaid application for sole custody had been denied.

65.    After the aforesaid denial of her petition for sole custody, Rachel Willgoos became enraged, combative, angered and resentful and devised a plot to seek retribution against the Plaintiff by again making fabricated allegations against the Plaintiff of criminal activity to both have Plaintiff falsely arrested/prosecuted and to enable her to make a further petition for custody.

66.    On or about February 3, 2010, Plaintiff went to Rachel Willgoos' premises to drop the couple's children off and Rachel Willgoos was not present.

67.    On or about February 3, 2010, the only person present at Ms. Willgoos' residence was her boyfriend, whom Plaintiff viewed as inadequate to care for the children, generally irresponsible and whom Rachel Willgoos had only known for a few weeks.

68.    On February 4, 2010, Plaintiff dropped the couple's son off for visitation with Ms. Willgoos and at the time when Plaintiff dropped off his son, the child was suffering from an illness.

69.    On February 4, 2010, after Plaintiff left called Ms. Willgoos' residence to speak with his son and check on his physical condition.

70.    At all times relevant herein, there was a Court order in place which required Rachel Willgoos to advise Plaintiff of the names and address of any individuals who would be babysitting the couple's children in advance.

71.    On February 4, 2010, Rachel Willgoos left the Plaintiff's son, who was ill, with her aforementioned boyfriend, in violation of the aforesaid Court order.

72.    On February 4, 2010, upon learning that Rachel Willgoos had left the couple's sick son with an irresponsible boyfriend whom she had only known for approximately three weeks, Plaintiff contacted Ms. Willgoos to discuss their son's physical condition and the appropriate care for him.

73.    On February 4, 2010, Rachel Willgoos spoke with Plaintiff and discussed the child's well being, however, in the middle of said conversation, Rachel Willgoos hung up on the Plaintiff.

74.    At the time Rachel Willgoos hung up on the Plaintiff, she knew that Plaintiff had called her for a legitimate purpose, namely to discuss the health of their child.

75.    On or about February 4, 2010, Rachel Willgoos decided to use the police and criminal justice system to obtain a collateral objective, namely immediate custody of her children and to deprive the Plaintiff of access to his children by conjuring fabricated allegations to have the Plaintiff falsely arrested.

76.    When Rachel Willgoos hung up on the Plaintiff, she knew that he would call back to continue the conversation, with respect to the child's health and well being.

77.    On February 4, 2010, after Rachel Willgoos hung up on Plaintiff, the Plaintiff reinitiated the call to Rachel Willgoos several times to continue the conversation concerning their child's health and well being.

78.    On February 4, 2010, on each occasion when Plaintiff reinitiated the call to Rachel Willgoos, it was known to Rachel Willgoos that Plaintiff was calling with a legitimate purpose, namely to continue their conversation relative to their child's health and well being and on each occasion when Plaintiff reinitiated the call, Rachel Willgoos answered the call and immediately hung up and/or let the call to go voicemail.

79.   Rachel Willgoos took the aforementioned actions to create the appearance that Plaintiff
      was harassing her by calling her repeatedly, when she knew that Plaintiff was calling with a
      legitimate purpose and it was her intentional disconnecting of the calls that prompted
      Plaintiff to reinitiate the call(s).

80.   On February 4, 2010, Rachel Willgoos contacted the Yorkstown police department and
      made a complaint to Angel Garica that the Plaintiff had committed the crime of aggravated
      harassment when she knew that Plaintiff had not committed any such crime.

81.   On February 4, 2010, Rachel Willgoos knowingly and intentionally provided false
      information and purposefully provided inaccurate/incomplete information to Angel Garcia
      and/or other employees of the Yorktown Police Department in that among other things,
      she told Angel Garica or other police officers that Plaintiff had threatened her, when
      Plaintiff did not threaten her at all, in that Willgoos falsely told Garcia or other police
      officers that Plaintiff said "Heads will roll, you fucking wait", which Plaintiff did not say,
      and that Plaintiff was calling her with no legitimate purpose and to annoy, harass and
      alarm her, when she knew that Plaintiff was calling her for a legitimate purpose and that
      her actions in failing to properly care for their sick child and repeated terminations of the
      Plaintiff's legitimate attempts to discuss the child's pressing health situation.

82.   On February 4, 2010, Rachel Willgoos further knowingly and intentionally failed to make
      a full and complete statement of the facts Angel Garica or other police officers in that she
      failed to disclose that she had irresponsibly failed to care for the Plaintiff's sick child and
      had violated a Court order by leaving the child with her boyfriend without providing
      Plaintiff, the child's physical custodial parent with the pedigree information of the
      individual who was watching the child, and she further failed to inform said police officers

that Plaintiff was trying to contact her to achieve proper care for the sick child and that she continuously terminated the calls, all of which were for a legitimate purpose.

83.     Rachel Willgoos made the aforesaid allegations, misstatements and failed to provide a full disclosure to the police in order to cause Plaintiff to be falsely arrested/prosecuted, out of malice, spite and retribution for her application for custody of the children having been disputed by Plaintiff and ultimately denied by the Court.

84.     On February 4, 2010, Rachel Willgoos signed a supporting deposition in which she falsely stated that Plaintiff in his initial phone call to Ms. Willgoos said "Fuck you Heads are Going to Roll" and in which she further falsely stated that Plaintiff had a past history of domestic violence and has physically hurt her and threatened her life in the past.

85.     By and through the foregoing, Rachel Willgoos incited and orchestrated police action through fabricated allegations of a crime which never occurred for the specific purpose of instigating Plaintiff's baseless arrest and prosecution and in so doing she became a willful participant in the false arrest and prosecution of the Plaintiff and further so far inserted herself into the process that she acted under color of law.

86.     Upon information and belief, the version of the events which Rachel Willgoos provided to Angel Garcia did not establish the commission of aggravated harassment, in that among other things, Rachel Willgoos claimed that Plaintiff had called her ten times for the purposes of having conversation about their children, which is a legitimate communication.

87.     Upon information and belief, at the time that Rachel Willgoos made the aforementioned complaint, there was reason to doubt the veracity of the complaint, of which Angel Garcia was aware.

88. On or about February 4, 2010, Angel Garcia arrested Plaintiff for the crime of aggravated harassment, without a warrant and without probable cause to believe that Plaintiff had committed any crime or violation.

89. As a result of the foregoing arrest, Plaintiff was held in custody and was deprived of his freedom and was further caused to suffer a deprivation of his Constitutional Rights and Liberties.

90. On or about February 4, 2010, Angel Garcia prepared and signed a misdemeanor information which charged Plaintiff with committing the crime of aggravated harassment in the second degree in violation of Penal Law § 240.30, and forwarded same or had same forwarded to the District Attorney's office.

91. By and through the foregoing, Angel Garica initiated and continued a prosecution against the Plaintiff without probable cause to believe the prosecution could proceed and with malice.

92. Angel Garcia arrested Plaintiff, initiated and continued a prosecution against him even though he knew or should have known that the acts which he accused Plaintiff of committing did not establish the commission of aggravated harassment or any other crime.

93. Angel Garcia prior to arresting Plaintiff and initiating the aforesaid prosecution against him failed to perform a good faith investigation into the merits of the complaint and failed to ascertain whether the acts complained of established the commission of a crime.

94. By and through the foregoing, Rachel Willgoos provided the police and the District Attorney with materially false information and information which failed to state a full version of the facts which caused Plaintiff to be falsely arrested and in so doing, Rachel Willgoos initiated and continued a prosecution against the Plaintiff.

95.     When Rachel Willgoos made the allegations aforesaid supporting deposition, she knew

        and/or it was reasonably foreseeable that the supporting deposition would be forwarded to

        the prosecutor and/or the Yorktown Court.

96.     Rachel Willgoos further provided the prosecutor with false information and failed to make

        a full and accurate statement of the facts to the prosecutor in that she verbally repeated the

        aforesaid statements to the prosecutor prior to the case being tried and verified their

        veracity.

97.     Defendants by and through the foregoing, induced the prosecutor to initiate and continue

        a baseless prosecution.

98.     By and through the foregoing, Rachel Willgoos initiated and continued the prosecution

        against the Plaintiff without probable cause to believe that it could succeed and with

        malice and acted jointly with the state actors complained of herein.

99.     Timothy Tausz at all times relevant herein, had the duty and the opportunity to protect

        the plaintiff from the unlawful actions of Angel Garcia, but failed to do so thereby

        proximately causing plaintiff's injuries was aware of Defendant Garcia's actions and failed

        to intervene on Plaintiff's behalf.

100.    The prosecution of Plaintiff was initiated and continued by the defendants even though it

        was apparent that he was innocent.

101.    Following the arraignment of the Plaintiff an Order(s) of Protection was signed by a

        Judge which deprived Plaintiff of his liberty.

102.    No reasonable officer in the position of the Defendants would have reasonably believed

        that there was probable cause for Plaintiff's arrest or the initiation and continuation of a

        prosecution based upon the information provided.

103. By and through the foregoing, Plaintiff was caused to be falsely arrested, held in jail pending arraignment, maliciously prosecuted, subjected to limitations on his liberty as a condition of his release and the aforesaid actions caused Plaintiff to suffer a deprivation of his civil rights and liberties guaranteed under the United States Constitution.

104. On April 7, 2010 or shortly prior thereto, Rachel Willgoos told Assistant District Attorney Joseph Servino, that Plaintiff called her with the specific intent to harass and annoy her and without any legitimate purpose to communicate with her.

105. All of the foregoing was a proximate cause of the injuries more fully described herein to plaintiff.

106. The aforesaid charges were resolved in Plaintiff's favor in that on August 9, 2011, a bench trial was conducted in the Yorktown Justice Court before the Honorable Ilan D. Gilbert and after hearing all of Rachel Willgoos' testimony, the Court issued a trial order of dismissal.

107. Defendants' actions violated the Plaintiff's civil rights including but not limited to his rights under the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution including but not limited to the right to due process, the right not to be unreasonably seized, right not to be prosecuted with the use of fabricated evidence and/or perjurious testimony, the right not be arrested and imprisoned without probable case, and defendants further falsely arrested and Maliciously prosecuted Plaintiff, subjected him to abuse of process, denied him his due process, unreasonably seized the Plaintiff and violated his civil and constitutional rights.

108. Defendants' actions violated clearly established rights.

109. Defendants' action shocks the conscience.

110.    As a result of the foregoing arrest and prosecution, Plaintiff was held in custody and was deprived of his freedom and was further caused to suffer a deprivation of his Constitutional Rights and Liberties.

111.    As a direct and proximate result of the foregoing acts committed by the defendants, the Plaintiff's liberty was constrained in that he was incarcerated and forced to endure the harassment, humiliations, hardships and inhumanities associated with being arrested and in jail, in that after his release, his freedom of travel was restricted and conditions of bail were placed upon his freedom and he was forced to incur attorney's fees for his defense of the charges which were maliciously initiated and continued by the defendants.

112.    As a direct and proximate result of the foregoing acts committed by the defendants, Plaintiff suffered great humiliation, ridicule, and mental anguish, depression, mental shock and mental trauma and was caused to incur costs of a legal defense including attorney's fees.

113.    Defendants are civilly liable, jointly and severally, to the Plaintiff pursuant to 42 U.S.C. § 1983.

### COUNT II: ARREST AND PROSECUTION OF April 7, 2010

114.    Plaintiff repeats and reiterates each and every one of the foregoing allegations as if more fully stated herein.

115.    On or about April 7, 2010, Plaintiff dropped his child off with Rachel Willgoos.

116.    On the aforesaid date, Rachel Willgoos failed to provide Plaintiff with certain information that she was obligated to provide pursuant to a Court order or directive.

117.    Plaintiff advised Rachel Willgoos that he was going to the police department to make a complaint regarding Ms. Willgoos' failure to comply with the Court Order or directive.

118. Plaintiff's actions did not violate any terms of any Court Order and there was no probable cause to believe that Plaintiff's actions violated any law.

119. On April 7, 2010, following the aforementioned interaction between Plaintiff and Rachel Willgoos, Willgoos contacted the Yorktown Police Department and complained that Plaintiff had violated an Order of Protection by threatening her, when in fact the only thing that Plaintiff said was that he was going to the Police Department to make a complaint.

120. On April 7, 2010, Rachel Willgoos knowingly provided false information to Donald Peters namely that Plaintiff had threatened her, when Plaintiff merely informed Willgoos that he was going to the police station to document Ms. Willgoos' noncompliance with the Court order.

121. At the time when Rachel Willgoos made the aforementioned misrepresentation, she knew that the information which she was conveying to the police department was false and she intentionally conveyed the false information with malice for the sole purpose of having Plaintiff baselessly arrested and prosecuted for a crime he did not commit in anticipation of pursuing yet another baseless application to the Family Court for sole custody based upon contrived allegations that the Plaintiff had committed criminal activity.

122. On April 7, 2010, Donald Peters knew or should have known that there was reason to doubt Ms. Willgoos' veracity and that the facts as alleged by Ms. Willgoos did not amount to a violation of any law.

123. By and through the foregoing, Rachel Willgoos incited and orchestrated police action through fabricated allegations of a crime which never occurred for the specific purpose of instigating Plaintiff's arrest and prosecution and in so doing she became a willful participant in the false arrest and prosecution of the Plaintiff and further so far inserted

herself into the process that she acted under color of law.

124.    Based upon Rachel Willgoos' fabricated account and contrived complaint, Plaintiff was

caused to be arrested for criminal contempt by the Yorktown Police Department, all

without probable cause.

125.    On April 7, 2010, Rachel Willgoos signed a supporting deposition in which she falsely

stated that Plaintiff was yelling at her and making threats, all of which did not occur.

126.    When Rachel Willgoos made the allegations and signed the aforesaid supporting

deposition, she knew and/or it was reasonably foreseeable that the supporting deposition

would be forwarded to the prosecutor and/or the Yorktown Court.

127.    On or about April 7, 2010, Donald Peters arrested Plaintiff and charged him with

Criminal Contempt in the Second Degree in violation of Penal Law § 215.50, all without a

warrant and without probable cause to believe Plaintiff had committed a crime.

128.    Rachel Willgoos acted jointly with Donald Peters in causing the arrest of Plaintiff by

knowingly and intentionally providing false information that Plaintiff had yelled at her and

threatened her.

129.    By and through the foregoing, Plaintiff was caused to be arrested, held in jail pending

arraignment, and the aforesaid actions caused Plaintiff to suffered a deprivation of his civil

rights and liberties guaranteed under the United States Constitution.

130.    On or about April 7, 2010, Donald Peters knowingly prepared and signed a Misdemeanor

Information which contained materially false statements of fact.

131.    On or about April 7, 2010, Donald Peters forwarded the aforesaid Misdemeanor

Information and/or had it forwarded to the prosecutor.

132.    By and through the foregoing, Donald Peters and Rachel Willgoos, initiated and continued

a prosecution against the Plaintiff, without probable cause to believe that it could succeed and with malice.

133.   Following the arraignment of the Plaintiff an Order(s) of Protection was signed by a Judge which deprived Plaintiff of his liberty.

134.   Rachel Willgoos further provided the prosecutor with false information and failed to make a full and accurate statement of the facts to the prosecutor in that she verbally repeated the aforesaid statements to the prosecutor prior to the case being tried and verified their veracity.

135.   The aforesaid charges were resolved in Plaintiff's favor in that on August 9, 2011, a bench trial was conducted in the Yorktown Justice Court before the Honorable Ilan D. Gilbert and after hearing all of the testimony, the Court found Plaintiff to be not guilty.

136.   Defendants' actions violated the Plaintiff's civil rights including but not limited to his rights under the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution including but not limited to the right to due process, the right not to be unreasonably seized, right not to be prosecuted with the use of fabricated evidence and/or perjurious testimony, the right not be arrested and imprisoned without probable case, the right to equal protection of the laws, and defendants further falsely arrested and Maliciously prosecuted Plaintiff, subjected him to abuse of process, denied him his due process, unreasonably seized the Plaintiff and violated his civil and constitutional rights.

137.   Defendants' actions violated clearly established rights and shocks the conscience.

138.   As a result of the foregoing arrest and prosecution, Plaintiff was held in custody and was deprived of his freedom and was further caused to suffer a deprivation of his Constitutional Rights and Liberties.

139.   As a direct and proximate result of the foregoing acts committed by the defendants, the
       Plaintiff's liberty was constrained in that he was incarcerated and forced to endure the
       harassment, humiliations, hardships and inhumanities associated with being arrested and in
       jail, in that  after his release, his freedom of travel was restricted and conditions of bail
       were placed upon his freedom and he was forced to incur attorney's fees for his defense of
       the charges which were maliciously initiated and continued by the defendants.

140.   As a direct and proximate result of the foregoing acts committed by the defendants,
       Plaintiff suffered emotional harm, great humiliation, ridicule, and mental anguish,
       depression, mental shock and mental trauma and was caused to incur costs of a legal
       defense including attorney's fees.

141.   Timothy Tausz at all times relevant herein, had the duty and the opportunity to protect the
       plaintiff from the unlawful actions of  Donald Peters, but failed to do so thereby
       proximately causing plaintiff's injuries was aware of Defendant Peter's actions and failed
       to intervene on Plaintiff's behalf.

142.   Following Plaintiff's arrest on or about April 7, 2010, Plaintiff and his attorney made
       complaints to Timothy Tausz, that the aforesaid complaint(s) by Rachel Willgoos were
       meritless and requested that Timothy Tausz investigate Plaintiff's complaint that Willgoos
       had filed a false report and Tausz in bad faith refused to take the complaint and refused to
       perform a good faith investigation in the Plaintiff's complaint even though he was put on
       notice of the falsity of Willgoos' complaint.

143.   By and through his intentional failures to supervise his subordinates and to perform a
       good faith investigation, and his failure to intervene in the prosecution of the Plaintiff,
       Timothy Tausz initiated and continued a prosecution against the Plaintiff without probable

cause to believe the prosecution could succeed and with malice.

144.    As a result of the foregoing arrest and prosecution, Plaintiff was held in custody and was deprived of his freedom and was further caused to suffer a deprivation of his Constitutional Rights and Liberties.

145.    As a direct and proximate result of the foregoing acts committed by the defendants, the Plaintiff's liberty was constrained in that he was incarcerated and forced to endure the harassment, humiliations, hardships and inhumanities associated with being arrested and in jail, in that  after his release, his freedom of travel was restricted and conditions of bail were placed upon his freedom and he was forced to incur attorney's fees for his defense of the charges which were maliciously initiated and continued by the defendants.

146.    As a direct and proximate result of the foregoing acts committed by the defendants, Plaintiff suffered emotional harm, great humiliation, ridicule, and mental anguish, depression, mental shock and mental trauma and was caused to incur costs of a legal defense including attorney's fees.

147.    Defendants' actions violated the Plaintiff's civil rights including but not limited to his rights under the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution including but not limited to the right to due process, the right not to be unreasonably seized, right not to be prosecuted with the use of fabricated evidence and/or perjurious testimony, the right not be arrested and imprisoned without probable case, and defendants further falsely arrested and Maliciously prosecuted Plaintiff, subjected him to abuse of process, denied him his due process, unreasonably seized the Plaintiff and violated his civil and constitutional rights.

148.    Defendants' actions violated clearly established rights.

149.   Defendants' actions shocks the conscience.

150.   Defendants are civilly liable to the Plaintiff pursuant to 42 U.S.C. § 1983.

## COUNT III: CUSTOM, POLICY AND MONNEL LIABILITY

151.   Plaintiff repeats and reiterates each and every one of the foregoing allegations as if more
fully stated herein.

152.   At all times relevant herein the Town of Yorktown had a custom, policy and practice of
improper training, improper supervision, failure to discipline, and of allowing and
permitting constitutional violations, tacitly permitting the fabrication of evidence, and the
commencement and continuation of criminal prosecutions without probable cause and of
other improper police practices at the Town of Yorktown, which amounted to a deliberate
indifference of plaintiff's rights.

153.   At all times relevant herein the Town of Yorktown had a custom, policy and practice of
improper training, improper supervision, failure to discipline, and of allowing and
permitting constitutional violations, in that they failed and overlooked criminal activity by
females in domestic situations but blindly accepted as true accusations by females against
males and in failing to perform good faith and thorough investigations when facts were
presented which warranted further investigation.

154.   In or about March, 2008, Plaintiff was attacked by Rachel Willgoos with a knife and
sustained serious personal injuries.

155.   Plaintiff reported the incident to members of the Yorktown Police Department who failed
and refused to take action on Plaintiff's complaint even though he had been the victim of a
crime and had sustained obvious injuries.

156.   The day following Plaintiff's complaint, Rachel Willgoos made a meritless complaint of

domestic violence for which she had no injury or corroborating evidence and Plaintiff was arrested baselessly.

157.   Defendants were intentionally blind to Plaintiff's claims that Rachel Willgoos was making false complaints, and refused or neglected to perform a good faith investigation of same, despite reason to believe that Rachel Willgoos was making false allegations against the Plaintiff.

158.   The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the Town of Yorktown.

159.   The Town of Yorktown intentionally and/or recklessly failed to properly instruct, train and/or supervise its police officers with regard to their obligations to refrain from falsely arresting citizens, fabricating evidence, initiating and continuing baseless prosecutions.

160.   All of the foregoing were direct and proximate causes of the violations of Plaintiff's civil rights and the injuries complained of herein.

161.   On April 7, 2010, Plaintiff went to the Yorktown Police department to report to the Yorktown Police Department that Rachel Willgoos had refused to comply with a Court order and the officer refused to take his complaint.

162.   However, a short time later, on April 7, 2010, Plaintiff was arrested by members of the Yorktown police department and prosecuted based upon baseless accusations of criminal activity, the falsity and meritlessness of which were apparent.

163.   The foregoing customs, policies, usages, practices, procedures and rules of the Town of Yorktown and/or the Yorktown Police Department were the moving force behind the constitutional violations suffered by plaintiff.

164.    The foregoing caused Plaintiff to be deprived of the civil rights and liberties more fully

complained of herein and further caused the damages more fully stated herein, and further

caused Plaintiff to suffer a deprivation of his right to Equal Protection.

### COUNT IV: ATTORNEYS FEES AND COSTS UNDER 42 U.S.C. § 1988

165.    Plaintiff repeats and realleges each and every allegation contained above with the same

force and effect as if fully set forth herein at length.

166.    The foregoing events constitute violations of plaintiff's statutory and constitutional rights,

thereby entitling him to attorneys fees, costs and disbursements as permitted by 28 U.S.C.

§ 1988.

WHEREFORE, plaintiff requests judgment against defendants in an amount to be

determined by a trier of fact, for compensatory and punitive damages, together with costs,

attorneys fees and disbursements, including interest on the judgment commencing from the date of

injury.

Dated: White Plains, N.Y.
            February 12, 2013

Yours etc.,

LAW OFFICE OF MICHAEL H. JOSEPH, P.L.L.C.

BY: _____
            Michael H. Joseph, Esq.
            203 East Post Road
            White Plains, New York 10601
            Tel: (914) 574-8330
            Fax: (914) 358-5379



RECEIVED

FEB 19 2013

U.S.D.C.
WP